¶ Ex. 4

**Prepared By:**

Ledgewood
Two Commerce Square
2001 Market Street, Suite 3400
Philadelphia, Pennsylvania 19103
Attention: Harris A. Dainoff, Esq.

**Upon Recordation Return To:**

Hard Money PA LLC
c/o HMB Servicing, LLC
10015 Old Columbia Road, Suite H-125
Columbia, MD 20146

**OPA Account No: 04-3-1409-00**

---

### OPEN-END MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT

*(This is an Open-End Mortgage and secures future advances pursuant to
42 Pa. C.S. §§ 8143 and 8144, Act No. 126 of 1990)*

### THIS INSTRUMENT IS TO BE INDEXED AS BOTH A MORTGAGE AND A FIXTURE FILING

from

**ERION REAL ESTATE INVESTORS, LLC,**
a Pennsylvania limited liability company, as mortgagor
(Borrower)

to

**HARD MONEY PA LLC**, as mortgagee
(Lender)

| | |
|---|---|
| Date of Execution: | November 9, 2021 |
| Effective Date: | November 9, 2021 |
| | |
| Location: | 519 North Wanamaker Street |
| City: | Philadelphia |
| County: | Philadelphia |
| Commonwealth: | Pennsylvania |

LW:1368835.1

1

THIS IS AN OPEN-END MORTGAGE PURSUANT TO 42 PA. C.S. §§ 8143 AND 8144, ACT NO. 126 OF 1990 AND SECURES ANY AND ALL FUTURE ADVANCES. THIS MORTGAGE SECURES ADVANCES UP TO A MAXIMUM OF $100,000.00 OF INDEBTEDNESS OUTSTANDING AT ANY TIME, PLUS ACCRUED AND UNPAID INTEREST. IT ALSO SECURES ATTORNEYS' FEES, LATE CHARGES AND OTHER ITEMS AS PROVIDED FOR BELOW.

## OPEN-END MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT

THIS OPEN-END MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT (this "Security Instrument") is made as of this 9 day of November, 2021 to be effective as of November 9, 2021 by ERION REAL ESTATE INVESTORS, LLC, a Pennsylvania limited liability company with an address of 7674 Woodcrest Avenue, Philadelphia, PA 19151 ("Borrower"), to HARD MONEY PA LLC, c/o HMB SERVICING, LLC, as Servicing Agent, a Maryland limited liability company, with an address of 10015 Old Columbia Rd., Ste H-125, Columbia, Maryland 21046, as mortgagee (together with its successors and assigns, "Lender").

1.00 RECITALS

1.01 *The Loan* -- Borrower is indebted to Lender for the Loan in the principal sum of **FIFTY THOUSAND and 00/100 DOLLARS ($50,000.00)** as evidenced by the Note of Borrower.

1.02 *Obligations Secured* -- This Security Instrument secures (a) the full and punctual payment of the Loan according to the terms of the Note, (b) the payment of all sums due to Lender according to the terms of any of the Loan Documents, and (c) the performance of, and compliance with, all of the obligations of the Borrower (express or implied) contained in the Loan Documents.

**NOW, THEREFORE,** in consideration of the making of the Loan by Lender to Borrower, the covenants, agreements, representations and warranties set forth in this Security Instrument and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

2.00 DEFINITIONS -- Whenever capitalized in this Security Instrument, the following terms shall have the meaning given in this Section 2.00, unless the context clearly indicates a contrary intent.

2.01 *Assignment of Rents and Leases* -- "Assignment of Rents and Leases" means the Assignment of Rents and Leases made by Borrower to Lender of even date herewith.

2.02 *Borrower* -- "Borrower" means the party(ies) identified as such in the introductory paragraph of this Security Instrument, his/her/their/its personal representatives, successors, heirs and/or assigns, including any subsequent owner of all or any portion of Borrower's interest in the Mortgaged Property.

2.03 *Collateral* -- "Collateral" has the meaning given and provided in Section 3.08.

2.04 *Controlling Party* -- "Controlling Party" means any Person, directly or indirectly, possessing the power to direct or cause the direction of the management and policies of Borrower, whether through the ownership or control of voting securities or rights, by contract or otherwise.

2.05 *Intentionally omitted.*

2.06 *Intentionally omitted.*

2.07 *Default* -- "Default" means: (a) the failure of Borrower to perform, cause to be performed, abide by, comply with, or observe any duty or obligation imposed upon Borrower by the Loan Documents; (b) the breach of any of Borrower's warranties or covenants contained in any of the Loan Documents; (e) a misrepresentation by Borrower, its counsel, or any other Person on behalf of Borrower, in any of the Loan Documents; and (d) any event, happening, or condition which would constitute an Event of Default if not cured within any applicable grace period.

2

2.08 *Default Rate* -- "Default Rate" means the "Default Rate" as defined pursuant to the terms and provisions of the Note executed simultaneously herewith, during the time period that the Default Rate is applicable.

2.09 *Encumbrances* -- "Encumbrances" includes all liens, mortgages, rights, leases, restrictions, easements, covenants, agreements, rights of way, rights of redemption, security interests, conditional sales agreements, land installment contracts, options, and all other burdens or charges.

2.10 *Environmental Laws* -- "Environmental Laws" has the meaning given and provided in Section 6.09.1.

2.11 *Event of Default* -- "Event of Default" has the meaning given and provided in Section 10.01.

2.12 *Expense Account* -- "Expense Account" means the Account which may, at Lender's discretion, be maintained pursuant to Section 6.02.

2.13 *Guaranty* -- "Guaranty" means the Guaranty Agreement in favor of the Lender executed by **STEPHEN AUGUSTUS DUFFUS-DOYLE and MILDRED S. ST FORT** pursuant to which they guarantee(s), among other things, the full and prompt payment and performance of the Borrower's obligations under the Loan Documents.

2.14 *Land* -- "Land" means the land more particularly described in Exhibit A to this Security Instrument.

2.15 *Law* -- "Law" means all federal, state, county, and municipal laws, regulations, rules, and ordinances, and all rules, regulations and orders of any other governmental authority including common law and rulings, decisions and interpretations of all judicial, quasi-judicial, and administrative bodies.

2.16 *Lease* -- "Lease" means each lease which purports to convey any interest of Borrower in any portion of the Mortgaged Property and includes subleases and assignments of leases.

2.17 *Legal Action* -- "Legal Action" includes all suits or other proceedings brought at law or in equity or before any administrative agency, governmental body, or arbitrator which in any manner relate to the Mortgaged Property or arise out of or relate to any of the Loan Documents.

2.18 *Lender* -- "Lender" all mean the party identified as such in the first paragraph of this Security Instrument, its personal representatives, heirs, successors and/or assigns, and any subsequent holder of the Note.

2.19 *Loan* -- "Loan" means the loan by the Lender to the Borrower in the principal amount as set forth herein above and as evidenced by the Note of Borrower.

2.20 *Loan Documents* -- "Loan Documents" means this Security Instrument, the Note, the Assignment of Rents and Leases, the Guaranty and any and all certificates, opinions, assignments and other documents executed in connection herewith or therewith, and all current and future supplements, amendments, and attachments thereto.

2.21 *Mortgaged Property* -- "Mortgaged Property" has the meaning given in Section 3.07.

2.22 *Note of Borrower or Note.* -- "Note of Borrower" or "Note" means the promissory note of Borrower of even date herewith in the principal sum of that set forth in Paragraph 1 herein above, payable to the order of Lender and evidencing the Loan, including all current and future supplements, amendments and attachments thereto.

2.23 *Operate* -- "Operate" means to operate, use, manage, lease, contract, and control, including the right to repair, renew, replace, alter, add, better, and improve.

2.24 *Permitted Encumbrances* -- "Permitted Encumbrances" means this Security Instrument and all Encumbrances as to which Lender has given its prior written approval, liens arising for real estate taxes or public charges for sewage, water, drainage or

3

other public improvements not yet due and payable, liens being contested as permitted herein, and Leases not in violation of Section 7.04.

2.25 *Person* -- "Person" means any individual, corporation, partnership, association, trust, joint venture, or any other legal entity.

2.26 *Property* -- "Property" has the meaning given in Section 3.03.

2.27 *Real Property* -- "Real Property" means the Land, together with the improvements and rights identified in Section 3.01 and all other portions of the Mortgaged Property which may legally be deemed to be real property for the purposes of this Security Instrument.

2.28 *Regulated Substance* -- "Regulated Substance" has the meaning given and provided in Section 6.09.1.

2.29 *Rents* -- "Rents" includes all rents, profits, royalties, issues, revenues, income, proceeds, earnings, and products generated by or arising out of the Mortgaged Property.

2.30 *Risk* -- "Risk" includes risk of loss or damage by fire, lightening, windstorm, hail, explosion, riot, riot attending a strike, civil strife, civil commotion, aircraft, vehicles, smoke, vandalism, malicious mischief, boiler explosion, and any other risk customarily insured against by persons operating property similar in kind to the Mortgaged Property.

2.31 *Security Instrument* -- "Security Instrument" means this instrument, including all current and future supplements, amendments, and attachments thereto.

2.32 *Taking* -- "Taking" includes any taking by condemnation or eminent domain, any sale in lieu of condemnation under threat thereof, the alteration of the grade of any street, or any other injury to or decrease in the value of the Mortgaged Property by any public or quasi-public authority or corporation or any other person having the power of eminent domain.

2.33 *Taxes* -- "Taxes" includes all taxes, excises, documentary stamp and transfer taxes, recording taxes, assessments, water rents, sewer rents, metropolitan district charges, sanitary district charges, public dues, and other public charges levied or assessed upon the Mortgaged Property, upon the Loan, or upon any Loan Document.

2.34 *Tenant* -- "Tenant" means any lessee of Borrower under any Lease, and any sub-lessee or assignee of a Lease.

2.35 *Uniform Commercial Code* -- "Uniform Commercial Code" means the Uniform Commercial Code as adopted and enacted by the Commonwealth of Pennsylvania and any amendments thereto or reenactments thereof.

3.00 GRANTING CLAUSES

3.01 *Lien on Real Property* -- The Borrower, in consideration of the Loan and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby irrevocably **MORTGAGE, GRANT, BARGAIN, SELL, PLEDGE, ASSIGN, WARRANT, TRANSFER AND CONVEY** to Lender and its successors and assigns, the fee simple property located in the County of Philadelphia, Commonwealth of Pennsylvania, which is more particularly described as follows:

## <u>SEE LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A" AND INCORPORATED HEREIN</u>

PROPERTY ADDRESS:    **519 North Wanamaker Street, Philadelphia, PA 19131**

Together with (a) all buildings and improvements now or hereafter located thereon, (b) all rights, rights of way, air rights, riparian rights, franchises, licenses, easements, tenements, hereditaments, appurtenances, accessions and other rights and privileges now or hereafter belonging to the Land or the buildings and improvements thereupon, now owned or hereafter acquired by the Borrower.

4

3.02 *Lien on Fixtures and Personal Property* -- The Borrower further does hereby irrevocably **MORTGAGE, GRANT, BARGAIN, SELL, PLEDGE, ASSIGN, WARRANT, TRANSFER AND CONVEY** to Lender and its successors and assigns, all of the machines, apparatus, equipment, fixtures and articles of personal property now or hereafter located on the Land or in any improvements thereon (other than that owned by any Tenant) and all the right, title and interest of the Borrower in and to any of such property which may be subject to any title retention or security agreement or instrument having priority over this Security Instrument.

3.03 *Property* -- All of the property described in Sections 3.01 and 3.02 is hereinafter collectively called the "Property".

3.04 *Lien on Leases and Rents and Other Rights* -- The Borrower further does hereby irrevocably **MORTGAGE, GRANT, BARGAIN, SELL, PLEDGE, ASSIGN, WARRANT, TRANSFER AND CONVEY** to Lender and its successors and assigns, (a) all Leases and Rents, including, without limitation, all cash or security deposits to secure performance by Tenants (whether such cash or securities are to be held until the expiration of the terms of Leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms), (b) all of the estate, right, title, use, claim and demand of every nature whatsoever, at law or in equity, which the Borrower may now have or may hereafter acquire in and to the Property, and (c) all right, title and interest of the Borrower in and to all extensions, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Property, hereafter acquired by or released to the Borrower, or constructed, assembled or placed by or for the Borrower on the Property, and all conversions of the security constituted thereby.

3.05 *Lien on Insurance Policies and Condemnation Awards* -- The Borrower further does hereby irrevocably **MORTGAGE, GRANT, BARGAIN, SELL, PLEDGE, ASSIGN, WARRANT, TRANSFER AND CONVEY** to Lender and its successors and assigns, all insurance policies and insurance proceeds pertaining to the Property and all awards or payments, including interest thereon and the right to receive the same, which may be made with respect to any of the Property as a result of any taking or any injury to or decrease in the value of the Property.

3.06 *Lien on Accounts* -- The Borrower further does hereby irrevocably **MORTGAGE, GRANT, BARGAIN, SELL, PLEDGE, ASSIGN, WARRANT, TRANSFER AND CONVEY** to Lender and its successors and assigns, all reserves, escrows and deposit accounts maintained by or for the benefit of the Borrower with respect to the Property, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof.

3.07 *The Mortgaged Property* -- All of the property described in this Article 3.00 is collectively called the "Mortgaged Property."

3.08 *Security Agreement* -- This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Mortgaged Property. By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the obligations under the Loan Documents, a security interest in the fixtures, equipment, personal property and the other property constituting the Mortgaged Property to the full extent that the fixtures, equipment, personal property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "Collateral"). If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including reasonable attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of

the Loan in such priority and proportions as Lender in its discretion shall deem proper. The principal place of business of Borrower (Debtor) is as set forth on page two hereof and the address of Lender (Secured Party) is as set forth on page two hereof.

3.09 *Fixture Filing* -- Certain of the Mortgaged Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, described or referred to in this Security Instrument, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement naming Borrower as a Debtor and Lender as the Secured Party filed as a fixture filing in accordance with the applicable provisions of the Uniform Commercial Code upon such of the Property that is or may become fixtures.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the use and benefit of Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay and perform the obligations under the Loan Documents (including, without limitation, the payment to Lender of the Loan) at the time and in the manner provided in this Security Instrument, the Note and the other Loan Documents, and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be; void (and Lender shall, if requested by Borrower and at no cost or expense to Lender, terminate and release this Security Instrument of record); provided, however, that Borrower's obligations to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

4.00 INTENTIONALLY OMITTED

5.00 REPRESENTATIONS AND WARRANTIES

5.01 *Warranty of Title and Further Assurances* -- The Borrower warrants that it has the right and authority to convey the Mortgaged Property and warrants generally title to the Mortgaged Property and that it will execute such further assurances as may be requested.

5.02 *Purpose of the Loan* -- The Borrower warrants that the Loan is a "commercial loan" under the laws of the Commonwealth of Pennsylvania. All proceeds of the Loan are being used for business and investment purposes and not for personal, family or household purposes, and the Loan is being secured by investment property and not a principal place of residence of any Borrower, Borrower or Guarantor.

5.03 *Existence, Good Standing, Power and Authority of Borrower* – In the event Borrower is a corporation, limited liability company, or other entity, Borrower represents and warrants Borrower is in good standing in the State of its formation and in the State in which the property resides, and will maintain its good standing and existence until all of Borrower's obligations under the Loan Documents have been performed and satisfied. The execution and delivery of the Loan Documents, the carrying out of the transactions contemplated by the Loan Documents, and the performance of Borrower's and any guarantor's obligations under the Loan Documents, have been duly authorized by all necessary action and will not conflict with or result in a breach of Law or any agreement or other instrument to which Borrower or any guarantor is bound. The Loan Documents are valid and binding on Borrower and any guarantor thereof and are enforceable against Borrower and each such guarantor in accordance with their respective terms, as applicable.

6.00 COVENANTS, RIGHTS, AND DUTIES OF BORROWER GENERALLY

6.01 *Covenant to Pay Loan and to Perform Obligations Under the Terms of the Loan Documents* -- The Borrower covenants that it will punctually (a) pay to the Lender the principal and interest of the Loan and all other costs and indebtedness secured hereby according to the terms of the Note and other Loan Documents as and when such sums become due, and (b) perform and satisfy all other obligations of the Borrower under the Loan Documents. Unless applicable law provides otherwise, all payments received from Borrower under the Note or this Security Instrument shall be applied by Lender in the order of priority set forth in the Note.

6.02 *Expense Account* --

6.02.1 Upon written request of the Lender, the Borrower will pay to the Lender monthly installments, each of which shall be equal to one-twelfth (1/12) of the sum of (a) the estimated annual premiums for all insurance policies required by Sections 8.01, 8.02 and 8.03 hereof, and (b) the estimated annual Taxes pertaining to the Mortgaged Property, to be held by the Lender in the Expense Account and disbursed by the Lender to pay the insurance premiums as they become due and Taxes before any penalty or interest shall accrue thereon. Estimates are to be made solely by the Lender and payments shall be made on the day of the month designated by the Lender. No interest shall be payable by the Lender on the Expense Account unless, and then only to the extent that, applicable Law shall otherwise require. All overpayments to the Expense Account shall be applied to reduce future payments to the Expense Account, if any, or shall be returned to the Borrower, in the sole discretion of the Lender.

6.02.2 Upon the request of the Lender, the Borrower shall pay such additional sums into the Expense Account as the Lender determines are necessary, so that one month prior to the date the Lender is required to make payments of insurance premiums, or Taxes, as the case may be, payments can be made therefor out of the Expense Account.

6.02.3 The Borrower hereby grants the Lender a security interest in the sums on deposit in the Expense Account to secure the obligations secured hereby, and upon the occurrence of an Event of Default, the Lender may, unless prohibited by applicable Law, apply the balance of the Expense Account to Operate the Mortgaged Property or to satisfy Borrower's obligations under the Loan Documents, as the Lender may elect.

6.03 *Compliance with Laws* -- The Borrower shall comply with all Laws, including Federal, State or local laws, rules and regulations relating to the Loan and the Mortgaged Property, a breach of which would materially and adversely affect (a) the financial condition of the Borrower, (b) the ability to use buildings and other improvements on the Land for the purposes for which they were designed or intended, (c) the value or status of the Mortgaged Property, or (d) the value or status of the Lender's title to the Mortgaged Property.

6.04 *Notice with Respect to Ownership and Control of Borrower* --

6.04.1 If Borrower is a corporate borrower, it will at all times promptly notify Lender of all changes in the ownership of the stock or interests of Borrower and any other change with respect to the identity of a Controlling Party. At any time Lender may request, Borrower shall furnish a complete statement, sworn to under penalty of perjury by an officer or Sole Member of Borrower, setting forth all of the stockholders, officers, directors, members and Controlling Parties of Borrower, and the extent of their respective ownership or control. In the event the Borrower is aware of any other Person having a beneficial interest in the corporate borrower, the statement shall also set forth the name of such Person and the extent of their interest.

6.04.2 If Borrower is a partnership it will at all times promptly notify Lender of all changes in ownership of partnership interests of Borrower and any other change with respect to the identity of a Controlling Party. At any time Lender may request, Borrower shall furnish a complete statement, sworn to under penalty of perjury by a general partner of Borrower setting forth all of the partners of Borrower and the extent of their respective partnership interest or control. In the event the Borrower is aware of any other Person having a beneficial interest in such partnership interests, the statement shall also set forth the name of such Person and the extent of their interest.

6.05 *Statement of Amount Owing and Defenses* -- Within ten (10) days after request from the Lender, the Borrower shall certify, in writing, the amount of principal and interest then owing on the Loan and whether the Borrower has any defenses or offsets to the Loan.

6.06 *Changes in Applicable Tax Laws* -- In the event (a) any Law is hereafter enacted which imposes a Tax upon the Loan, any of the Loan Documents, or the transactions evidenced or contemplated by any of the Loan Documents, or (b) any Law now in force governing the taxation of mortgage, debts secured by mortgages, or the manner of collecting any such Tax shall be changed or modified, in any manner, so as to impose a Tax upon the Loan, any of the Loan Documents, or the transactions evidenced or contemplated by any of the Loan Documents, (including, without limitation, a requirement that revenue stamps be affixed to any or all of the Loan Documents), the Borrower will promptly pay any such Tax. If the Borrower fails to make prompt payment, or if any Law either prohibits the Borrower from making the payment or would penalize the Lender if Borrower makes the

payment, then the failure, prohibition, or penalty, shall entitle the Lender to exercise all rights hereunder as though an Event of Default had occurred.

6.07 *Further Assurances and Continuation Statements* – If requested by Lender, the Borrower will execute, acknowledge, deliver and record, at the Borrower's sole cost and expense, all further instruments, deeds, conveyances, supplemental mortgages, assignments, financing statements, transfers, and assurances as in the opinion of the Lender's counsel may be necessary (a) to preserve, continue, and protect the interest of the Lender in the Mortgaged Property, (b) to perfect the grant to the Lender of every part of the Mortgaged Property, (c) to facilitate the execution of this mortgage, (d) to secure the rights and remedies of the Lender under this Security Instrument and the other Loan Documents, or (e) to transfer to any new Lender or purchaser at a sale hereunder the Mortgaged Property, funds, and powers now or hereafter held in trust hereunder. The Borrower, at the request of the Lender, shall authorize Lender to promptly file any continuation statements required by the Uniform Commercial Code to maintain the lien on any portion of the Mortgaged Property subject to the Uniform Commercial Code.

6.08 *Expenses* -- The Borrower shall reimburse the Lender for any sums, including attorney's fees and expenses, incurred or expended by them (a) in connection with any action or proceeding to sustain the lien, security interest, priority, or validity of any Loan Document, (b) to protect, enforce, interpret, or construe any of their rights under the Loan Documents, (e) for any title examination or title insurance policy relating to the title to the Mortgaged Property, or (d) for any other purpose contemplated by the Loan Documents. The Borrower shall, upon demand, pay all such sums together with interest thereon at the Default Rate accruing from the time the expense is paid. All such sums so expended by the Lender shall be secured by this Security Instrument. In any action or proceeding to foreclose this Security Instrument or to recover or collect the Loan, the provisions of Law allowing the recovery of costs, disbursements, and allowances shall be in addition to the rights given by this Section 6.08.

6.09 *Environmental Matters* -- The Borrower covenants and agrees as follows:

6.09.1 The Borrower warrants and represents that it has investigated or caused to be investigated the current and previous ownership and uses of the Mortgaged Property, in a manner consistent with current and good commercial practices and in scope and detail necessary to make the determinations required by this paragraph, and that such investigation has revealed no fact, event or condition with respect to the Mortgaged Property, or any activity conducted thereon, on or at any time prior to the date hereof, that constitutes or constituted non-compliance with, interferes with or prevents continued compliance by the Borrower with, or gives rise to any present or potential liability of the Borrower under, any law, regulation, rule, ordinance, license, permit, certificate or authorization related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, handling, emission, discharge, release, threatened release or other regulated activity into the environment, of any Regulated Substance.

As used in this Security Instrument, "Regulated Substance" means any pollutant, contaminant, hazardous waste, hazardous substance, toxic substance or toxic waste or any other material referred to in or subject to regulation under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act (SARA), the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., the Toxic Substance Control Act (TSCA), 15 U.S.C. §§ 2601 et seq.., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the Clean Water Act, 33 U.S.C. §§ 1251 et seq., all as amended, and all regulations under any of the foregoing, and all similar federal, state and local laws and regulations including without limitation those which may be stricter or more inclusive than the foregoing federal laws, now in force or hereinafter amended or enacted (collectively, the "Environmental Laws"). "Regulated Substance" includes, in addition to all of the foregoing and without limitation, asbestos, polychlorinated biphenyls (PCBs), petroleum products, lead-based paints, and biocontaminants, including without limitation mold and anthrax.

6.09.2 The Borrower warrants and represents that it has disclosed to the Lender all pending or threatened litigation, judicial or administrative in nature, and all orders, rulings, permits, notices and threatened or pending investigations regarding Regulated Substances on the Mortgaged Property.

6.09.3 The Borrower and any other parties, including, but not limited to, tenants, licensees and occupants, will not conduct or be involved in any activity or use other than Regulated Substances ordinarily and customarily utilized in the sales and service of motor vehicles, which Regulated Substances shall be stored and utilized in accordance with all applicable laws and regulations, on or near the Mortgaged Property, which activity or use could involve or lead to (i) manufacture, processing,

distribution, use, treatment, storage, disposal, transport, handling, emission, discharge, release, threatened release or other regulated activity into the environment, of any Regulated Substance; or (ii) the imposition of liability on the Borrower or any other subsequent or former owner of the Mortgaged Property or the creation of a lien on the Mortgaged Property under any Environmental Laws.

6.09.4 The Borrower warrants and represents that it has not agreed or committed to indemnify or hold harmless any party, except those indemnified by this Security Instrument, from or against any present or potential liability under any Law with respect to any fact, event or condition on the Mortgaged Property.

6.09.5 The Borrower warrants and represents that it has not treated, stored, disposed of, handled, discharged, released, or emitted into the environment any Regulated Substance other than Regulated Substances ordinarily and customarily utilized in the sales and service of motor vehicles, which Substances shall be stored and utilized in accordance with all applicable laws and regulations, nor has the Borrower contracted or otherwise arranged for any of the foregoing, which may form the basis for any claim, demand, action, or liability, or which may give rise to any obligation to engage in or compensate any party for any cleanup, removal, remediation or abatement of such substances on or in the Mortgaged Property, or any property, structure, soil, air, surface water, groundwater or sediments or otherwise on or near the Mortgaged Property.

6.09.6 The Borrower will comply strictly and in all respects with the requirements of the Environmental Laws and shall promptly notify the Lender in the event of the discovery of Regulated Substances at the Mortgaged Property other than Regulated Substances ordinarily and customarily utilized in the sales and service of motor vehicles, which Regulated Substances shall be stored and utilized in accordance with all applicable laws and regulations. Further, the Borrower will promptly forward to the Lender, in the manner required for notices to the Lender, copies of all orders, notices, permits, applications or other communications and reports in connection with any use, release, discharge, spillage, or the discovery of any Regulated Substance or any other matters within the scope of Environmental Laws as they may affect the Mortgaged Property.

6.09.7 The Borrower agrees that if at any time the Lender has reasonable cause to believe there are any Regulated Substances upon the Mortgaged Property other than Regulated Substances ordinarily and customarily utilized in the sales and service of motor vehicles, which Regulated Substances shall be stored and utilized in accordance with all applicable laws and regulations, or at any time after the occurrence of an event of default under the Note, this Security Instrument or any other Loan Document, the Lender may obtain, at the Borrower's cost and expense, an environmental site assessment or environmental audit report from a firm reasonably acceptable to the Lender, to assess with a reasonable degree of certainty (i) the presence of any Regulated Substances and (ii) the prudent course and options in connection with the abatement, cleanup and/or removal thereof, and the cost thereof.

6.09.8 The Borrower agrees that in the event of the presence of any Regulated Substance upon the Mortgaged Property other than Regulated Substances ordinarily and customarily utilized in the sales and service of motor vehicles, which Regulated Substances shall be stored and utilized in accordance with all applicable laws and regulations, whether or not the same originates or emanates from the Mortgaged Property and whether or not the same results from the Borrower's activities or use of the Mortgaged Property, or if the Borrower shall fail to comply with any of the requirements of the Environmental Laws, the Lender may at its election, but without the obligation to do so, (i) give such notices, (ii) cause such work to be performed at the Mortgaged Property or (iii) take any and all other actions as the Lender shall reasonably deem necessary or advisable in order to abate, cleanup and/or remove the Regulated Substance or otherwise cure the Borrower's noncompliance.

6.09.9 The Borrower acknowledges that the Lender has made the Loan and other advances secured by this Security Instrument and the other Loan Documents in reliance upon the Borrower's representations, warranties and covenants in this paragraph. Accordingly, the Borrower and the Lender agree that the provisions of this paragraph and paragraph 6.10 hereof shall supersede any provisions in the Note, this Security Instrument or any other Loan Document executed by the Borrower or any other persons liable for the obligations hereunder, which in any way limit the personal liability of the Borrower or any such other person for the obligations hereunder. Further, the Borrower shall be personally liable for all expenditures, costs and expenses made by, incurred by or asserted against the Lender arising under this paragraph even if such expenditures, costs and expenses exceed the amount of the Loan. All of the representations, warranties and covenants of this paragraph shall survive the repayment of the Loan and termination, satisfaction or release of this Security Instrument.

9

6.09.10 Any amounts disbursed by the Lender pursuant to the provisions of this paragraph shall be added to, and deemed a part of, the obligations hereunder, shall be secured in the same manner as the Note is secured shall bear interest from the date of the disbursement thereof at the same rate of interest as set forth in the Note, and shall, together with the interest thereon, be repayable by the Borrower on demand.

6.10 *Indemnity* -- The Borrower shall protect, defend, indemnify and save harmless the Lender from, against and in respect of, any and all losses (including diminution in the value of the Mortgaged Property), costs, damages, liabilities, obligations, claims, causes of action, fines, penalties and expenses (including reasonable attorneys' fees, expenses and litigation costs, sums paid in settlements of claims and any such fees and expenses incurred in enforcing this indemnity or collecting any sums due hereunder) and expenses for accounting, consulting, engineering, investigation, cleanup, removal and/or disposal and other remedial costs incurred to permit continued or resume normal operations of activities on or use of the Mortgaged Property, directly or indirectly imposed upon or incurred by or asserted against the Lender, its directors, officers, agents, employees, successors or assigns, or any of them, by any other party or parties (including, without limitation, a governmental entity), arising out of or in connection with (a) ownership of the Mortgaged Property or any interest therein, or receipt of any Rents or other sums therefrom, (b) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property or the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, (c) any use, nonuse or condition of the Mortgaged Property or the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, (d) any failure on the part of the Borrower or any other person liable for the obligations hereunder to perform or comply with any of the terms, covenants, conditions and agreements set forth in this Security Instrument, the Note or any other Loan Document executed by the Borrower or any such other person liable for the obligations hereunder, (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof for construction or maintenance or otherwise, (f) any action brought against the Lender attacking the validity, priority or enforceability of this Security Instrument, the Note or any other Loan Document, (g) the use, generation, refining, manufacture, transportation, transfer, production, processing, storage, handling, or treatment of any Regulated Substance on, under, from, or affecting the Mortgaged Property or any other property; (h) the presence, disposal, dumping, escape, seepage, leakage, spillage, discharge, emission, pumping, emptying, injecting, leaching, pouring, release, or threatened release of any Regulated Substance on, under, from, or affecting the Mortgaged Property or any other property; (i) the clean-up, removal or disposal of any Regulated Substance on, under, from or affecting the Mortgaged Property or any other property required by this Security Instrument or any governmental authority; (j) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Regulated Substance, including any damage arising out of any clean-up required by the governmental authorities or Environmental Laws; (k) any lawsuit brought or threatened, settlement reached, or government order relating to such Regulated Substance; (1) any violation of laws, orders, rules, regulations, requirements, guidelines, or demands of government authorities, including Environmental Permits, which are based upon or in any way related to such Regulated Substance including, without limitations, the costs and expenses of any remedial action, reasonable attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses; or (m) a material misrepresentation or inaccuracy in any representation or warranty or a material breach of or failure to perform any covenant made by Borrower in this Security Instrument; and/or (n) any present or future violation of any Laws. Any amounts payable to the Lender under this paragraph shall be added to, and deemed a part of, the obligations hereunder, shall be secured in the same manner as the Note is secured, shall bear interest from the date of the Lender's demand for payment thereof at the same rate of interest as set forth in the Note and shall, together with the interest thereon, be payable by the Borrower on demand. In the event any action, suit or proceeding is brought against the Lender or the directors, officers, agents of employees of the Lender by reason of any such occurrence, the Borrower, upon the request of the Lender and at the Borrower's expense, shall resist and defend such action, suit or proceeding or cause the same to be resisted and defended by counsel designated by the Borrower and approved by the Lender. Such obligations under this paragraph shall survive the repayment of the Loan and termination, satisfaction or release of this Security Instrument.

7.00 RIGHTS AND DUTIES OF BORROWER WITH RESPECT TO MANAGEMENT AND USE OF THE MORTGAGED PROPERTY

7.01 *Control by the Borrower* -- Until the happening of an Event of Default, the Borrower shall have the right to possess and enjoy the Mortgaged Property and, except as prohibited by the Loan Documents, to receive the Rents.

7.02 *Management* -- At all times the Borrower shall provide competent and responsible management to Operate the Mortgaged Property. If the Lender so requests, all management and service contracts involving the Mortgaged Property shall be

subject to approval in writing by the Lender prior to their execution and, once approved by Lender, shall not be amended or terminated without Lender's prior written approval.

7.03 *Financial Statements; Books and Records* – If requested by the Lender, the Borrower shall furnish to the Lender annual financial and operating statements of the Borrower and of the Mortgaged Property. Such statements shall show all items of income and expense for the operation of the Mortgaged Property, shall be certified by the Borrower and shall be prepared in accordance with generally accepted accounting principles applied on a consistent basis. All such financial and operating statements shall be supplied not later than one hundred and twenty (120) days after the close of Borrower's fiscal year. The Borrower agrees to make its books and records relating to the operation of the Mortgaged Property available for inspection by the Lender, upon request at any reasonable time, at Borrower's principal place of business or at such other location in the Commonwealth of Pennsylvania as Lender may reasonably request.

7.04 *Leases* -- All Leases shall be subject to the prior written approval of the Lender, and shall contain a provision prohibiting subleasing or assigning by any Tenant without the prior written approval of the Lender, which approval shall not be unreasonably withheld. The Borrower will comply with its obligations under all Leases. The Borrower, within thirty (30) days after written request from the Lender, shall deliver to the Lender a detailed list and description of all Leases with copies thereof and such additional information as may be requested by the Lender. Upon demand by the Lender, Borrower will transfer and assign to the Lender, in a form satisfactory to the Lender, Borrower's interest in any Lease as further security for the obligations secured hereby. No such assignment shall impose upon the Lender any liability to perform the Borrower's obligations under any Lease.

7.05 *Enforcement of Leases, Amendment, Waiver, etc.* -- The Borrower will enforce all Leases according to their terms and shall take such action to that end as may be requested by the Lender, regardless of whether any such Lease has been assigned to the Lender. The Borrower shall not, without the prior written consent of the Lender (a) cancel or terminate, or consent to or accept any cancellation, termination, or surrender of any Lease, or permit any event within the Borrower's control to occur which would terminate or cancel any Lease, (b) amend or modify any Lease, (c) waive any default under or breach of any Lease, (d) consent to or permit any prepayment or discount of rent or advance rent under any Lease, or (e) give any consent, waiver, or approval under any Lease or take any other action with respect to any Lease which may impair the value of the Lender's interest in the Mortgaged Property. Borrower shall comply with and perform all duties and obligations imposed upon or assumed by it in all Leases.

7.06 *Assignment of Rents; Appointment of Receiver; Lender in Possession* – As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender, all the Rents of the Mortgaged Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Mortgaged Property, regardless of to whom the Rents of the Mortgaged Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid Rents and hereby directs each tenant of the Mortgaged Property to pay such Rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Security Instrument, Borrower shall collect and receive all Rents of the Mortgaged Property as trustee for the benefit of Lender and Borrower, to apply the Rents so collected to the sums secured by the Loan Documents with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment of additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in the Loan Documents, and without the necessity of Lender entering upon and taking and maintaining full control of the Mortgaged Property in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all Rents of the Mortgaged Property as the same become due and payable, including but not limited to Rents then due and unpaid, and all such Rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such Rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Mortgaged Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Lender's written demand to each tenant, therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said Rents, that Borrower has not performed, and will not perform, any acts or has not executed, and will not execute, any instrument which would prevent Lender

11

from exercising its rights under this Paragraph, and that at the time of execution of the Loan Documents there has been no anticipation or prepayment of any of the Rents of the Mortgaged Property for more than one month prior to the due dates of such Rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any Rents of the Mortgaged Property more than one month prior to the due dates of such Rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of Rents of the Mortgaged Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in the Loan Documents, Lender may in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all Rents of the Mortgaged Property, the filing of any suit to collect the Rents or evict any tenant/lessee, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management or maintenance of the Mortgaged Property, all on such terms as are deemed best to protect the security of the Lender in Lender's sole discretion. In the event Lender elects to seek the appointment of a receiver for the Mortgaged Property upon Borrower's breach of any covenant or agreement of Borrower in the Loan Documents, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Mortgaged Property.

All Rents collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in the Loan Documents shall be applied first to the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's bonds, costs of repairs to the Mortgaged Property, premiums on insurance policies, taxes, assessments and other charges on the Mortgaged Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Mortgaged Property and then to the sums secured by the Loan Documents. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Mortgaged Property and shall be liable to account only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property by reason of anything done or left undone by Lender under this Paragraph.

If the Rents of the Mortgaged Property are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note (or Default Rate, as applicable) unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Mortgaged Property by Lender or the receiver and any application of Rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Mortgaged Property shall terminate at such time as this Security Instrument and/or the Loan Documents ceases to secure indebtedness held by Lender.

The Borrower shall not assign the Rents arising from the Mortgaged Property or any part thereof or any interest therein without the prior written consent of the Lender, except as assigned to Lender herein. Any attempted assignment, pledge, hypothecation, or grant without such consent shall be null and void.

The Borrower hereby appoints Lender the true and lawful attorney-in-fact of Borrower, with full power of substitution, in Borrower's name and/or in Borrower's name, after and Event of Default hereunder, to sue for or make such settlement of claims as Lender may deem necessary or desirable in Lender's sole and absolute discretion, or otherwise demand, collect and receive all rents, issues and profits emanating from or related to the Mortgaged Property or any part thereof, or any of leases related to the Loan or the Mortgaged Property, and to apply the same as provided for in this Security Instrument. This power of attorney shall be deemed to be coupled with an interest, shall be irrevocable, and shall not terminate on the disability of the Borrower. It is the intention of the Borrower that all persons or parties may rely upon this power of attorney, and continue to rely upon it, until this assignment of rents of the Mortgaged Property, Security Instrument and/or the Loan Documents ceases to secure indebtedness held by Lender.

In the event of any other terms or covenants of this Security Instrument or the Loan Documents conflict with the terms and covenants in this Paragraph, the terms and covenants of this Paragraph shall prevail.

7.07 *Intentionally omitted.*

7.8 *Restriction on Encumbrances* -- The Borrower shall not allow any Encumbrances on the Mortgaged Property except the Permitted Encumbrances. The Borrower shall give the Lender prompt notice of any default in or under any Permitted Encumbrances and any notice of foreclosure or threat of foreclosure. The Borrower shall comply with its obligations under all Permitted Encumbrances. The Lender may, at its election, satisfy any Encumbrance (other than a Permitted Encumbrance not then in default), and the Borrower shall, on demand, reimburse the Lender for any sums advanced for such satisfaction together with interest at the Default Rate accruing from the date of satisfaction, which sums shall be secured hereby.

7.9 *Maintenance, Waste, Repair and Inspection* -- Borrower shall: (a) keep and maintain the Mortgaged Property in good order, condition, and repair and make all fixture and equipment replacements and repairs necessary to ensure that the security for the Loan is not impaired; (b) not commit or suffer any waste of the Mortgaged Property; (c) promptly protect and conserve any portion of the Mortgaged Property remaining after any damage to, or partial destruction of, the Mortgaged Property; (d) promptly repair, restore, replace or rebuild any portion of the Mortgaged Property which is damaged or destroyed; (e) promptly restore the balance of the Mortgaged Property remaining after any Taking; (f) permit the Lender or its designee to inspect the Mortgaged Property at all reasonable times; and (g) not make any material change in the grade of the Mortgaged Property or permit any excavation of or on the Mortgaged Property.

7.10 *Removal and Replacement of Equipment and Improvements* -- No part of the Mortgaged Property, except supplies consumed in the normal course of business and operations, or as a result of, shall be removed from the Land, demolished, or materially altered without the prior written consent of the Lender. Any replacement fixtures or equipment shall be free of all Encumbrances, shall automatically be subject to the lien and security interest of this Security Instrument, and shall automatically be subject to the granting clauses hereof

7.11 *Charges/Liens* -- The Borrower shall pay (a) all water and sewer rates, rents, taxes, assessments, premiums and/or any other taxes, impositions or liens attributable to the Mortgaged Property (other than those payable by the Lender from the Expense Account) on or before the date any interest or penalty begins to accrue or attach thereto; and (b) all lawful claims which, if unpaid, might become a lien or charge upon the Mortgaged Property to such an extent as to materially and adversely affect the Borrower's ability to use the Mortgaged Property for the purposes for which it was designed or intended. If requested by Lender, Borrower shall promptly furnish to Lender receipts evidencing such payments.

Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Security Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Mortgaged Property. Borrower shall not allow any lien inferior to this Security Instrument to be perfected against the Mortgaged Property without Lender's prior written permission. Any violation of the provisions of this Paragraph shall constitute and Event of Default hereunder.

7.12 *Restrictive Covenants, Zoning, etc.* -- No restrictive covenant, zoning change, or other restriction affecting the Mortgaged Property may be entered into, requested by or consented to by Borrower without the prior written consent of the Lender.

7.13 *Preservation of Appurtenances* -- The Borrower will do all things necessary to preserve intact and unimpaired, all easements, appurtenances, and other interests and rights in favor of, or constituting any portion of, the Mortgaged Property.

7.14 *Restriction on Transfers* -- The Borrower will not, without the prior written consent of the Lender, lease, bargain, sell, transfer, assign, further encumber or convey the Mortgaged Property, or any portion thereof, or any legal or equitable interest therein, nor will the Borrower suffer or permit any such lease, bargain, sale, transfer, assignment, further encumbrance or conveyance. If the Borrower or any shareholder or partner of the Borrower is not a natural person but is a corporation, partnership, trust or other legal entity, then the bargain, sale, transfer or assignment of any legal or beneficial interest (including, without limitation, transfers resulting from mergers, consolidations or liquidations) in the Borrower or any such shareholder or partner of the Borrower without the prior written consent of the Lender shall be deemed to be in contravention of the provisions of the preceding sentence.

13

7.15 *Future Advances* -- Upon request of Borrower, Lender, at Lender's option so long as this Security Instrument secures indebtedness held by Lender, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Security Instrument. At no time shall the principal amount of the indebtedness secured by this Security Instrument, not including sums advanced in accordance herewith to protect the security of this Instrument, exceed the original amount of the Note.

## 8.00 INSURANCE AND CONDEMNATION

8.01 *Casualty Insurance and Allocation in Event of Loss* -- The Borrower shall keep the Mortgaged Property insured for the benefit of the Borrower and the Lender against all Risks. The limits, form, co-insurance clauses, and insurer for all such policies shall be satisfactory to the Lender. The Borrower shall deliver to the Lender all such policies. The policies shall contain a standard mortgagee loss payable endorsement providing that all payments shall be made to the sole order of the Lender to be applied by them in accordance with the terms of this Security Instrument. Within thirty (30) days prior to the expiration of any policy, the Borrower shall supply the Lender with a renewal policy marked "Premium Paid." All proceeds under such policies shall be paid to the Lender and shall be applied in the order and in the amounts that the Lender may elect, in the Lender's sole and absolute discretion, to (a) prepay the principal (whether or not then due and payable) and interest on any sums due under the Note; or (b) to alter, restore or rebuild all or any portions of the Mortgaged Property which may have been altered, damaged or destroyed as a result of the casualty or other injury to the Mortgaged Property for which such insurance proceeds have been paid to the Lender. All moneys not utilized for the restoration of the Mortgaged Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity. If proceeds of insurance are used to restore the Mortgaged Property, as aforesaid, the Lender shall not be obligated to see to the proper allocation thereof, nor shall any, such amount so used be deemed a payment of any indebtedness secured by, this Security Instrument. Proceeds of insurance to be used for restoration purposes shall be held by the Lender and disbursed under such terms and conditions, to such Persons, and at such times, as Lender may determine.

8.02 *Liability Insurance* -- Unless waived by Lender, the Borrower will maintain liability and indemnity insurance with respect to the Mortgaged Property in such amounts, with such companies, and subject to such terms and conditions as the Lender may direct and approve. Such policies of insurance shall name the Lender as an additional insured thereunder and within thirty (30) days prior to the expiration of any such policy, the Borrower shall supply the Lender with a renewal policy marked "Premium Paid".

8.03 *Business Interruption Insurance* -- Unless waived by Lender, the Borrower shall also carry and maintain rental interruption insurance on the Mortgaged Property in the same manner and under the same conditions (to the extent applicable) as provided in Section 8.02.

8.04 *Condemnation and Allocation of Condemnation Awards* -- Borrower, immediately upon obtaining knowledge of the institution of any proceeding for a Taking, will notify the Lender of such proceedings. The Lender may participate in any such proceedings, and Borrower will, from time to time, deliver to the Lender all instruments requested by it to permit such participation. Any award or payment made as a result of any Taking shall be paid to the Lender and shall be applied in the order and in the amounts that the Lender may elect, in the Lender's sole and absolute discretion, to (a) prepay the principal (whether or not then due and payable) and interest on any sums due under the Note; or (b) to alter, restore or rebuild all or any portions of the Mortgaged Property which may have been altered, damaged or destroyed as a result of the Taking for which such award or payment has been paid to the Lender. All moneys not utilized for the repair or restoration of the remainder of the Mortgaged Property shall be applied as a prepayment of amounts due under the Note, in inverse order of maturity. The application of any award or payment as a prepayment of amounts due under the Note shall take effect only on the actual date of the receipt of the payment or award by the Lender. In the event any payment or award is used to restore the Mortgaged Property, as aforesaid, Lender shall not be obligated to see to the proper allocation thereof nor shall any amount so used be deemed a payment of any indebtedness secured by this Security Instrument. Payments or awards to be used for restoration purposes, as aforesaid, shall be held by the Lender and disbursed under such terms and conditions, to such Persons, and at such times, as Lender may determine.

## 9.00 INTENTIONALLY OMITTED

## 10.00 DEFAULT

14

10.01 *Event of Default* -- The occurrence of any of the following shall constitute an Event of Default.

10.01.1 *Monetary Defaults* -- The failure of the Borrower to pay any amounts due under the Loan Documents when due and payable, whether at maturity, by obligation or election to prepay, or otherwise, unless such payment is made within five (5) days from the date such payment became due and payable.

10.01.2 *Breach of Representations and Warranties* -- Any representation or warranty made by the Borrower herein or any statement or representation made in any of the Loan Documents shall prove to have been incorrect in any material respect when made or shall be breached.

10.01.3 *Insurance Provisions* -- The failure of Borrower to perform its obligations set forth in Section 8 hereof.

10.01.4 *Receiver; Bankruptcy* -- If the Borrower or any guarantor of the Loan (a) applies for, or consents in writing to, the appointment of a receiver, trustee, or liquidator for it of the Mortgaged Property, or of all or substantially all of its or his assets, (b) files a voluntary petition in bankruptcy or admits in writing its inability to pay its debts as they become due, (c) makes an assignment for benefit of creditors, (d) files a petition or an answer seeking a reorganization, composition, adjustment. arrangement with creditors, or takes advantage of any insolvency law, (e) files an answer admitting the material allegations of a petition filed against it in any bankruptcy, reorganization, composition, adjustment, arrangement, or insolvency proceeding, or (f) is dissolved as a result of an adversary suit or proceeding.

10.01.5 *Receiver; Bankruptcy (Involuntary)* -- If (a) any execution or attachment levied against the assets of the Borrower or any guarantor of the Loan is not set aside, discharged, or stayed within sixty (60) days after the same was levied or within ten (10) days after the expiration of any stay thereof, (b) an order, judgment, or decree is entered by any court of competent jurisdiction on the application of a creditor, adjudicating the Borrower or any guarantor of the Loan a bankrupt or insolvent, or appointing a receiver, trustee, or liquidator for the Borrower or any guarantor, or of all or substantially all of its assets, or (c) an order of relief is entered against the Borrower or any guarantor pursuant to any bankruptcy statute or law and such order, judgment, or decree continues unstayed and in effect for a period of sixty (60) days and is not discharged within ten (10) days after the expiration of any stay thereof.

10.01.6 *Assignment of Rents* -- Any attempted assignment by the Borrower of the whole or any part of the Rents in contravention of Section 7.06.

10.01.7 *Prohibited Transfer or Encumbrance* -- Any transfer or event in violation of Section 7 hereof.

10.01.8 *Loss of License* -- The loss of any franchise agreement, license or permit necessary for the operation, occupancy, or use of the Mortgaged Property, if the same is not restored within thirty (30) days after the loss.

10.01.9 *Judgments* -- Any judgment against the Borrower or any guarantor of the Loan for an amount in excess of Five Thousand and 00/100 Dollars ($5,000.00) remains unpaid, unstayed, undischarged, unbonded or undismissed for a period of thirty (30) days following the date which the judgment becomes final or any appeal thereof is finally determined.

10.01.10 *Other Obligations* -- Any obligation of the Borrower (other than the obligations secured hereunder) in excess of Five Thousand and 00/100 Dollars ($5,000.00) becomes or is declared to be due and payable prior to the expressed maturity thereof and the same is not paid within thirty (30) days of the accelerated maturity date.

10.01.11 *Other Defaults* -- The failure of the Borrower to perform or observe any of its obligations or covenants under this Security Instrument, the Note and/or the Loan Documents not specifically referred to in this Article 10.00.

10.01.12 *Default under Other Liens/Loan Documents* -- The failure of the Borrower to perform or observe any of its obligations or covenants in any lien or loan document other than this Security Instrument, or any interest therein (legal or equitable), or any part thereof, either inferior or superior in right to the lien of this Security Instrument.

10.01.13 *Event of Default under Other Loan Documents* -- An "Event of Default" (if so defined) or, if not so defined, a default occurs under a Loan Document other than this Security Instrument.

10.01.14 *Death* – The death, dissolution or termination of the Borrower or any other person liable or responsible for the observance or performance of the obligations and covenants under this Security Instrument.

10.01.15 *Change in Law* -- The passage of any law or the decision of any court rendering or declaring any of the covenants and agreements set out in the Note, this Security Instrument or any other Loan Document to be legally unenforceable, inoperative, void or voidable.

10.01.16 *Material Change* -- A material adverse change occurs in the Borrower's financial condition, or the Lender believes the prospect of payment or performance of the obligation and covenants under this Security Instrument is impaired, or the Lender otherwise believes itself insecure.

10.01.17 *Cross Default* -- the occurrence of any default, any event of default, or any other fact or circumstance which, with the giving of notice or the passage of time, or both, would constitute an event of default under any document or instrument evidencing and/or securing any other indebtedness of Borrower, any Guarantor, or any affiliate of Borrower or any Guarantor, to Lender, subject to the expiration of any applicable grace or cure periods, if any.

10.02 *Payment or Performance by Lender* -- Upon Default, the Lender may, at its option, make any payments or take any other actions it deems necessary or desirable to cure the Default or conserve the Mortgaged Property. The Borrower shall, upon demand, reimburse the Lender for all sums so advanced or expenses incurred by it, together with interest at the Default Rate from the date of advance or payment of the same, which sums shall be secured by this Security Instrument. The Lender may enter upon the Mortgaged Property without prior notice to the Borrower or judicial process and may take any action to enforce its rights under this Section 10.02 without liability to the Borrower.

10.03 *Possession by Lender* -- Upon the occurrence of an Event of Default and to the extent permitted by law, the Lender may enter upon and take possession of the Mortgaged Property without notice to the Borrower, judicial process, or the appointment of a receiver. The Lender may exclude all persons from the Mortgaged Property and may proceed to Operate the Mortgaged Property and receive all Rents. The Lender shall have the right as agent for the Borrower to Operate the Mortgaged Property and carry on the business of the Borrower, either in the name of the Borrower or otherwise. The Lender shall not be liable to the Borrower for taking possession of the Mortgaged Property, as aforesaid, nor shall the Lender be required to make repairs or replacements, and it shall be liable to account only for Rents actually received by it. All Rents collected by the Lender shall be applied (a) first, to pay all expenses incurred in taking possession of the Mortgaged Property, (b) second, to pay costs and expenses to Operate the Mortgaged Property and/or to comply with the terms of the Loan Documents, including reasonable attorney's fees, (c) third, to pay all sums secured by the Loan Documents in the order of priority selected by Lender, and (d) fourth, with the balance, if any, to the Borrower or such other Person as may be entitled thereto. Neither the Assignment of Rents and Leases nor any other assignment of Leases shall impose upon Lender any liability to perform Borrower's obligations under any Lease.

10.04 *Acceleration of the Note* -- Upon an Event of Default, Lender may, at its option and by written notice to the Borrower, declare the entire balance of the Note and all other amounts due under the Loan Documents, immediately due and payable. Acceleration of maturity, once claimed by the Lender may, at the option of the Lender, be rescinded by written acknowledgment to that effect by the Lender, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity.

10.05 *Collection of Rents* -- Upon the occurrence of an Event of Default and written demand by the Lender to the Tenants, all Rents shall be payable directly to the Lender, as more fully set forth in Section 7.06 herein.

10.06 *Intentionally Omitted.*

10.07 *Application and Proceeds of Sale* -- Upon a sale, by foreclosure or otherwise, the purchaser shall receive that portion of or interest in the Mortgaged Property purchased by it free from any claims of the Borrower and without any liability to see to the application of the purchase money. The net proceeds from the sale, after deduction of all costs of the sale, shall be applied (a) first, to pay all expenses incurred in taking possession of the Mortgaged Property, (b) second, to pay costs and expenses to Operate the Mortgaged Property, including reasonable attorney's fees, (c) third, to pay all sums secured by or due under the Loan

16

Documents in the order of priority determined by the Lender, and (d) fourth, the balance, if any, to the Borrower or to other Persons entitled thereto.

10.08 *Deficiency of Proceeds* -- If, after a sale, by foreclosure or otherwise, a deficiency exists in the net proceeds of such sale, the Lender shall be entitled to a deficiency judgment or decree for such deficiency which shall bear interest at the Default Rate.

10.09 *Intentionally Omitted*

10.10 *Insurance or Condemnation After Deficiency* -- If the Mortgaged Property is sold at a sale, by foreclosure or otherwise, prior to receipt of an insurance or a condemnation award or payment, the Lender shall receive and apply the proceeds of the award or payment toward the satisfaction of any deficiency resulting from the foreclosure sale, whether or not a deficiency judgment is sought, recovered, or denied.

10.11 *Right of the Lender to Bid* -- The Lender may bid and become the purchaser at a sale, by foreclosure or otherwise, under this Security Instrument.

10.12 *Intentionally Omitted*

10.13 *Appointment of a Receiver* -- Upon the occurrence of an Event of Default, the Lender shall be entitled to the immediate appointment of a receiver for the Mortgaged Property, without regard to the value of the Mortgaged Property or the solvency of any person liable for payment of the amounts due under the Loan Documents.

10.14 *Remedies Cumulative* -- All rights, powers, and remedies of the Lender provided for in the Loan Documents are cumulative and concurrent and shall be in addition to and not exclusive of any appropriate legal or equitable remedy provided by Law or contract. Exercise of any right, power, or remedy shall not preclude the simultaneous or subsequent exercise of any other by the Lender.

10.15 *Consent to Jurisdiction and Venue* -- The Borrower consents to being sued in any jurisdiction where any of the Mortgaged Property is located or where Borrower resides or is located.

10.16 *Rights Under the Uniform Commercial Code* -- Upon the occurrence of an Event of Default, the Borrower shall assemble and make available to the Lender those portions of the Mortgaged Property which consist of personal property at a place to be designated by the Lender, and the Lender may exercise all the rights and remedies of a secured party under the Uniform Commercial Code. Any notices required by the Uniform Commercial Code shall be deemed reasonable if mailed certified mail, return receipt requested, postage prepaid, by the Lender to the Borrower.

10.17 *Right to Determine Which Leases Survive* -- If disclosed in the advertisement of sale, a foreclosure sale may be made subject to one or more Leases of the Mortgaged Property.

10.18 *Waiver of Statute of Limitations* -- Borrower hereby waives the right to assert any statute of limitations as a bar in the enforcement of the lien of this Security Instrument or to any action brought to enforce the Note or any other obligation secured by this Security Instrument.

10.19 *Waiver of Marshalling* -- Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Security Instrument and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waives any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

10.20 *Uniform Instrument; No Presumption Against Drafter* -- This form of instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering

real property and related fixtures. This Security Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event any foreclosure procedure or provision called for in this Security Instrument fails to comply with the lawful foreclosure procedure in the State or jurisdiction in which the Property is located, or technical requirements must be met to foreclose on the Mortgaged Property that are not contained or accounted for herein, the lawful procedures/technical requirements shall be deemed to supplant the provisions herein which are inconsistent or which have been omitted, and shall be incorporated herein by reference, and any defenses to unlawful or defective foreclosure as a result of such inconsistencies or omissions are hereby waived by Borrower. There shall be no presumption against the drafter of this Security Instrument in the interpretation hereof.

## 11.00 MISCELLANEOUS

11.01 *Waivers* -- No term of any Loan Document shall be deemed waived unless the waiver shall be in writing and signed by the parties making the waiver. Any failure by the Lender to insist upon the Borrower's strict performance of any of the terms of the Loan Documents shall not be deemed or construed as a waiver of those or any other terms. Any delay in exercising or enforcing any rights with respect to a Default or an Event of Default shall not bar the Lender from exercising any rights under the Loan Documents, or at law or in equity.

11.02 *Consents* --

11.02.1 The Lender may (a) release any person liable under the Loan Documents, (b) release any part of the security, (c) extend the time of payment of the Loan, and/or (d) modify the terms of the Loan Documents, regardless of consideration and without notice to or consent by the holder of any subordinate lien on the Mortgaged Property. No release, extension or modification of the security held under the Loan Documents shall impair or affect the lien of this Security Instrument or the priority of such lien over any subordinate lien.

11.02.2 Regardless of whether a Person has been given notice or has given its prior consent, it shall not be relieved of any obligation under any Loan Documents by reason of (a) the failure of the Lender, or any other Person to take any action to foreclose, or otherwise enforce any provision of the Loan Documents, (b) the release of any other Person liable under any Loan Document, (c) the release of any portion of the security under the Loan Documents, or (d) any agreement or stipulation between any subsequent owners of the Mortgaged Property and Lender extending the time of payment or modifying the terms of any Loan Document.

11.03 *Headings* -- All Article and Section headings are for convenience only and shall not be interpreted to enlarge or restrict the provisions of this Security Instrument.

11.04 *Notices* -- All notices shall be in writing and, unless otherwise specified in a written notice, shall be sent to the respective addresses of the parties as set forth in the Note, or as updated by Borrower by written notice to Lender.

A notice may be hand-delivered or mailed, postage prepaid, first class, registered or certified mail. Any notice sent by mail shall be deemed to have been received on the second business day following the date of mailing.

11.05 *Binding Effect* -- No transfer of any portion of the Mortgaged Property or any interest thereon shall relieve any transferor of its obligations under the Loan Documents. No transferor of any obligation under any Loan Document shall be relieved of its obligations by any modification of any Loan Document subsequent to the transfer.

11.06 *Amendment* -- No Loan Document may be modified except in writing signed by (a) the Lender and (b) Borrower.

11.07 *Severability* -- In the event any provision of this Security Instrument shall be held invalid or unenforceable by an court of competent Jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

11.08 *Notices from Governmental Authorities Affecting the Mortgaged Property* -- Any notice from any governmental or quasi-governmental authority or corporation with respect to the Mortgaged Property sent to or known by the Borrower shall be promptly transmitted to the Lender.

18

11.09 *Applicable Law* – This Security Instrument shall be governed by the Laws of the Commonwealth of Pennsylvania, without regard to the principles of conflict of laws.

11.10 *Time of the Essence* -- Time is of the essence with respect to the Loan Documents.

11.11 *Jury Waiver* – THE UNDERSIGNED AND THE LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND THE LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE LOAN DOCUMENTS.

11.12 *Effect of Payments* -- Any payment or other performance made in accordance with the Loan Documents by any Person other than Borrower shall not entitle such Person to any right of subrogation under the Loan Documents, unless expressly consented to in writing by the Lender.

11.13 *Word Forms* -- The use of any gender, tense, or conjugation herein shall be applicable to all genders, tenses, and conjugations. The use of the singular shall include the plural and the plural shall include the singular.

12.00 PENNSYLVANIA-SPECIFIC PROVISIONS

12.01 *Generally* -- In the event of any inconsistencies between the terms and conditions of this Section 12 and the terms and conditions of this Security Instrument or any of the other Loan Documents, the terms and conditions of this Section 12 shall control and be binding.

12.02 *Future Advances* –

12.02.1 This Security Instrument is executed and delivered to secure, among other things, future advances and re-advances, to the extent provided for in the Loan Documents. It is understood and agreed that this Security Instrument secures all present and future advances and permitted re-advances, if any, made for the benefit of Borrower and that the lien of such future advances and re-advances shall relate back to the date of this Security Instrument, and Borrower and Lender intend that this Security Instrument be an Open-End Mortgage as described in 42 PA.C.S.A. § 8143 and as such be entitled to all benefits under 42 PA.C.S.A. § 8141, as amended.

12.02.2 If Borrower sends a written notice to Lender which purports to limit the indebtedness secured by this Security Instrument and to release the obligation of Lender to make any additional advance to or for the benefit of Borrower, such a notice shall be ineffective as to any future advances made: (A) to pay taxes, assessment, maintenance charges and insurance premiums; (B) for costs incurred for the protection of the Mortgaged Property or the lien of this Security Instrument; (C) on account of expenses incurred by Lender by reason of a default of Borrower hereunder or under the Loan Documents; and (D) on account of any other costs incurred by Lender to protect and preserve the Mortgaged Property or the lien of this Security Instrument. It is the intention of the parties hereto that any such advance made by Lender after any such notice by Borrower shall be secured by the lien of this Security Instrument on the Mortgaged Property.

12.02.3 This Security Instrument secures, and the Note evidences, the obligation of Borrower to repay any advances made after the date hereof for payment of taxes, assessments, maintenance charges, insurance premiums, costs incurred for the protection of the Mortgaged Property or the lien of this Security Instrument and costs incurred by Lender by reason of the occurrence of an Event of Default.

12.02.4 The maximum amount of indebtedness (as defined in 42 PA. C.S.A. § 8143) that may be outstanding at any time and secured hereby is $100,000.00, plus accrued and unpaid interest thereon.

12.03 *Interest After Default* -- If any payment due hereunder or under the Note, is not paid when due, either at stated or accelerated maturity or pursuant to any of the terms hereof, then and in such event, Borrower shall pay interest thereon at the Default Rate in accordance with the provisions of the Loan Documents. Nothing in this Section or in any other provision of this Security Instrument shall constitute an extension of the time of the payment of the Loan. After entry of a judgment on any

19

of the Loan Documents or a judgment in mortgage foreclosure hereunder, interest shall continue to accrue under the Note, and this Security Instrument at the rates set forth in the Note. This Security Instrument shall not, solely for purposes of determining interest payable under the Note, merge with any judgment on any Loan Document or a judgment in mortgage foreclosure under this Security Instrument.

12.04 *Additional Event of Default* -- In addition to the Events of Default set forth Section 10.01 of this Security Instrument, the following shall constitute an Event of Default hereunder: Borrower receives any notice pursuant to 42 Pa. C.S.A. §§ 8143(c) or 8143(d) with respect to this Security Instrument or any mortgage held by Lender, which mortgage secures the loan evidenced by the Note or any other indebtedness of Borrower to Lender.

12.05 *Mortgage Foreclosure –*

12.05.1 Upon the occurrence and continuance of any Event of Default, Lender may institute an action of mortgage foreclosure, or take such other action at law or in equity for the enforcement of this Security Instrument and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the Loan, including all sums which may have been lent by Lender to Borrower after the date of this Security Instrument, all sums which may have been advanced by Lender for taxes, water or sewer rents, other lienable charges or claims insurance or repairs or maintenance, and all costs of suit, including counsel fees. Borrower authorizes Lender at its option to foreclose this Security Instrument subject to the rights of any tenants of the Mortgaged Property, and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be asserted by Borrower as a defense to any proceedings instituted by Lender to recover the indebtedness secured hereby or, subject to any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property; however, nothing herein contained shall prevent Borrower from asserting in any proceedings disputing the amount of the deficiency or the sufficiency of any bid at such foreclosure sale that any such tenants adversely affect the value of the Mortgaged Property.

12.05.2 **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY, UPON AN EVENT OF DEFAULT WHICH HAS OCCURRED AND IS CONTINUING, BORROWER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR BORROWER, AND ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER, IN FAVOR OF LENDER, FOR RECOVERY BY LENDER OF POSSESSION THEREOF (PLUS AN ATTORNEY'S COMMISSION EQUAL TO FIFTEEN PERCENT (15%) OF THE UNPAID BALANCE OF THE OBLIGATIONS OF BORROWER UNDER THE LOAN DOCUMENTS, BUT IN NO EVENT LESS THAN $3,000 WITH COSTS OF SUIT AND RELEASE OF ALL ERRORS), FOR WHICH THIS SECURITY INSTRUMENT, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO BORROWER, LENDER SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION.**

12.05.3 Lender may confess judgment therein before or after the institution of proceedings to foreclose this Security Instrument or to enforce the Note, or after entry of judgment therein or on the Note, or after a Sheriff's sale of the Mortgaged Property in which Lender is the successful bidder. The authorization to pursue such proceedings for obtaining possession and confessing judgment therein is an essential part of the remedies for enforcement of the Security Instrument and the Note, and shall survive any execution sale to Lender.

12.05.4 Lender shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Borrower under the terms of this Security Instrument, as they become due, without regard to whether the principal indebtedness or any other sums secured by the Note and this Security Instrument shall be due, and without prejudice to the right of Lender thereafter to bring an action to foreclose this Security Instrument or take any other action for any default by Borrower existing at the time the earlier action was commenced. Any real estate sold to satisfy the obligations

secured by this Security Instrument may be sold in one parcel, as an entirety, or in such parcels and in such manner or order as Lender, in its sole discretion, may elect. Neither the Borrower nor any other person now or hereafter obligated for payment of all or any part of the Loan shall be relieved of such obligation by reason of the failure of Lender to comply with any request of Borrower or of any other person so obligated to take action to foreclose on this Security Instrument or otherwise enforce any provisions of the Security Instrument or the Note, or by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Security Instrument. No release of all or any part of the security as aforesaid shall in any way impair or affect the lien of this Security Instrument or its priority over any subordinate lien.

12.06 *Additional Advances and Disbursements; Costs of Enforcement* -- If any Event of Default exists, Lender shall have the right, but not the obligation, to cure such Event of Default in the name and on behalf of Borrower subject to and in accordance with the provisions of the Loan Documents. All sums advanced and expenses incurred at any time by Lender under this Section, or otherwise under this Security Instrument or any of the other Loan Documents or applicable law, shall bear interest from the date that such sum is advanced or expense incurred, to and including the date of reimbursement, computed at the Default Rate, and all such sums, together with interest thereon, shall be secured by this Security Instrument.

12.07 *Commercial Loan* -- Borrower represents and warrants that the indebtedness included as obligations secured by this Security Instrument was obtained solely for the purpose of carrying on or acquiring a business or commercial investment and not for residential, consumer or household purposes.

12.08 *Mechanic's Liens* -- Borrower represents and warrants that as of the date of this Security Instrument, there are no delinquent accounts payable or mechanics' or materialmen's liens in favor of any materialman, laborer, or other person in connection with labor or materials furnished to or performed on any of the Mortgaged Property and no demolition, excavation, construction or other work has commenced, been performed or is in progress, nor have materials been supplied to any portion of the Mortgaged Property or agreements entered into for work to be performed or materials to be supplied to any portion of the Mortgaged Property prior to the date of this Security Instrument.

12.09 *Power of Attorney* -- The powers of attorney granted herein shall not be construed in accordance with 20 Pa. C.S.A. § 5601, as amended. Such powers shall be exercised for the benefit of Lender and not for the benefit of Borrower and, in acting under such powers, Lender shall have no fiduciary duty to Borrower.

12.10 *Purchase Money Instrument* -- This Security Instrument is intended to be a purchase money mortgage and shall be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. C.S.A. § 8141, as amended, if and to the extent this Security Instrument satisfies the applicable statutory requirements thereof.

## IMPORTANT NOTICE

THIS SECTION SHALL SERVE AS NOTICE TO ALL PERSONS WHO MAY SEEK OR OBTAIN A LIEN ON ALL OR ANY PORTION OF THE MORTGAGED PROPERTY AFTER THE DATE OF RECORDING OF THIS SECURITY INSTRUMENT, THAT UNTIL THIS SECURITY INSTRUMENT IS RELEASED, THE FOLLOWING SHALL BE SECURED WITH THE PRIORITY AFFORDED THIS SECURITY INSTRUMENT AS AND WHEN RECORDED: (A) ANY DEBT OWED TO LENDER BY BORROWER OR ANY OTHER CREDIT PARTY, INCLUDING ADVANCES MADE SUBSEQUENT TO THE RECORDING OF THIS SECURITY INSTRUMENT; AND (B) ANY MODIFICATION TO THIS SECURITY INSTRUMENT, ANY OTHER LOAN DOCUMENT, OR THE OBLIGATIONS MADE SUBSEQUENT TO THE DATE OF RECORDING OF THIS SECURITY INSTRUMENT, INCLUDING, WITHOUT LIMITATION, INCREASES IN THE AMOUNT OF THE OBLIGATIONS SECURED, INCREASES IN INTEREST RATES WITH RESPECT TO ANY OBLIGATION, CHANGES TO THE MATURITY DATE OF ANY OBLIGATION (EACH, A "MODIFICATION"), NOTWITHSTANDING THAT SUCH MODIFICATION MAY OCCUR AFTER THE DATE OF RECORDATION OF ANY JUNIOR LIEN. ALL PERSONS WHO MAY SEEK OR OBTAIN A LIEN ON THE MORTGAGED PROPERTY AFTER THE DATE OF RECORDING OF THIS SECURITY INSTRUMENT EXPRESSLY TAKE SUBJECT TO THE TERMS OF THIS SECURITY INSTRUMENT AND ALL SUCH MODIFICATIONS, NOTWITHSTANDING THAT THE MODIFICATIONS MAY ADVERSELY AFFECT OR PREJUDICE THE RIGHTS OF SUCH PERSON. NOTHING IN THIS SECTION OR IN ANY OF THE OTHER PROVISIONS OF THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS SHALL BE DEEMED TO BE AN APPROVAL OF OR CONSENT TO, OR A WAIVER OF ANY RIGHT TO OBJECT TO, ANY LIEN ON ANY OF THE MORTGAGED PROPERTY OTHERWISE PERMITTED BY THE TERMS OF THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS.

**IN WITNESS WHEREOF,** Borrower has executed this Security Instrument as of the day and year first above written.

ERION REAL ESTATE INVESTORS, LLC, a Pennsylvania limited liability company

_____(SEAL)
STEPHEN AUGUSTUS DUFFUS-DOYLE
ITS: Sole Member

COMMONWEALTH OF PENNSYLVANIA)
                                                          ) SS:
COUNTY OF __Philadelphia__)

On this, the __9th__ day of November, 2021, before me a notary public in and for the Commonwealth and County aforesaid, the undersigned officer, personally appeared STEPHEN AUGUSTUS DUFFUS-DOYLE, who acknowledged himself to be the Sole Member of ERION REAL ESTATE INVESTORS, LLC, a Pennsylvania limited liability company, and that he as such Sole Member, being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing his name as said Sole Member.

IN WITNESS HEREOF, I hereunto set my hand and official seal.

> Commonwealth of Pennsylvania – Notary Seal
> CHAUNCEE A THORNTON – Notary Public
> Philadelphia County
> My Commission Expires Jan 9, 2022
> Commission Number 1322511

Notary Public
My Commission expires: __1/9/2022__

[NOTARIAL SEAL]

<u>CERTIFICATION OF RESIDENCE</u>:

I certify that the precise address of the within-named Lender is:

HARD MONEY PA LLC
c/o HMB SERVICING, LLC
10015 Old Columbia Rd., Ste H-125
Columbia, Maryland 21046

_____
On behalf of Lender

## EXHIBIT A

## LEGAL DESCRIPTION

(see attached)

# FIDELITY NATIONAL TITLE INSURANCE COMPANY
## TITLE INSURANCE COMMITMENT

### SCHEDULE A Con't
File Number: 342404FTA
### EXHIBIT A
### LEGAL DESCRIPTION

All that certain Lot(s), piece(s) or parcel(s) of land, with the buildings and improvements thereon erected, situate, lying and being in the *City of Philadelphia, Philadelphia County, State of PA*

ALL THAT CERTAIN lot or piece of ground with the two story brick messuage or tenement thereon erected.

SITUATE on the East of Wanamaker Street at the distance of 360 feet 6 inches Southward from the South side of Girard Avenue.

CONTAINING in front or breadth on Wanamaker Street 15 feet and extending in length or depth Eastward of that width between parallel lines at right angles to Wanamaker Street 55 feet to a certain 3 feet wide alley which extends
Northward into Girard Avenue and Southward into a certain other 3 feet wide alley which last mentioned alley leads Southeastward from Wanamaker Street to 58th Street.

NOTE:    519 North Wanamaker Street, Tax Parcel(s) 04-3140900, City of Philadelphia, Philadelphia County, State of PA

NOTE:    Lot and Block shown for informational purposes only.